### Stiglitz, County Clerk, v. Schardien.

### Reager v. Stiglitz, County Clerk.

### Blair v. Lewis, Secretary of State.

(Decided June 19, 1931.)

800

GARDNER K. BYERS and HARRIS W. COLEMAN for appellant and appellee Stiglitz.

WILLIAM T. BASKETT for appellee Schardien and appellant Reager.

HENRY J. STITES for appellant Blair.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee Lewis and others.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming in first and third cases, and reversing in second case.

These three cases, presenting a common question, have been consolidated and considered together, and will be disposed of in a single opinion. The ultimate question involved is the constitutionality of the two acts of the General Assembly of 1930 purporting to redistrict the state into one hundred legislative and thirty-eight senatorial districts pursuant to section 33 of the Constitution of the commonwealth. Chapters 147, 148, Acts of 1930.

The case first styled was brought by George W. Schardien, a citizen, taxpayer, and voter in the Fifty-Eighth representative district located in Louisville, Jefferson county, Ky., against Wm. G. Stiglitz, county clerk of Jefferson county, to enjoin him from preparing and furnishing ballots and other necessary things for the approaching August primary election in the legislative districts defined by the new act, and to require such duties to be performed according to the old districts created by the act of 1918. Ky. Statutes, sec. 2003. The lower court held chapter 147 of the Acts of 1930 unconstitutional and void, and granted the relief sought. The clerk has prosecuted an appeal from the judgment.

The second case was instituted by Allen M. Reager, a citizen, taxpayer, and voter in the Thirty-Seventh senatorial district located in Louisville, Jefferson county, against Wm. G. Stiglitz, county clerk of Jefferson county, to enjoin him from supplying the ballots and other paraphernalia in the senatorial primary for the new districts, and to compel him to carry out such duties according to the old senatorial districts. The circuit court denied the relief sought by Reager upon the ground that the district in which he lived exceeded the hypothetical unit for senatorial districts by only 11 per cent., and plaintiff could not complain of such inequality so long as his particular district was not unreasonably disproportionate to the hypothetical unit, regardless of the radical inequality of the other districts. Reager has appealed from the judgment dismissing his action.

The other case was filed in the Franklin circuit court by John Henry Blair, a citizen, taxpayer, and voter of Harlan county, Ky., living in the Ninety-Eighth representative district and in the Twenty-Third senatorial district, against Miss Ella Lewis, Secretary of State, James W. Cammack, Attorney General, and W. B. O'Connell, clerk of the Court of Appeals, D. B. Cornett, and F. E. Bradley, members of the state board of election commissioners, to restrain them from permitting the election of the General Assembly for 1932 under the districting acts of 1930, to enjoin the Secretary of State from including those acts as a part of the statute law of the state, and to inhibit the Attorney General from publishing chapters 147 and 148 of the Acts of 1930. By an amended petition it was alleged that the Secretary of State had certain duties to perform respecting elections. The circuit court, without deciding the question of plaintiff's right to maintain the action, sustained a special demurrer to the petition upon the ground that neither of the defendants had any present duties to perform respecting the legislative or senatorial districts that was subject to the control of the court or at all. Blair has appealed from the judgment dismissing his action.

It will be convenient to consider the three appeals separately.

1. It is urged that a citizen, taxpayer and voter may not maintain an action to question the validity of redistricting acts, since no pecuniary right is involved. It is settled that the courts, in a proper case, may interpose for the protection of political rights, and the right to be equally represented in the legislative bodies of the state is not only a political but a constitutional right. If an act of the Legislature infringes the constitutional rights of a citizen, taxpayer, and voter, he may invoke the processes of the courts to prevent the performance of a duty attempted to be imposed by such void act. Hager v. Robinson, 154 Ky. 489, 157 S. W. 1138; Schardien v. Harrison, 230 Ky. 1, 18 S. W. (2d) 316; Ragland v. Anderson, 125 Ky. 141, 100 S. W. 865, 30 Ky. Law Rep. 1199, 128 Am. St. Rep. 242; Yates, Clerk, v. Collins, 118 Ky. 682, 82 S. W. 282, 973, 26 Ky. Law Rep. 558, 930.

It is not necessary to be a candidate for office in order to raise such questions. The basis of the jurisdiction is that the unconstititional law infringes the right of a citizen to be equally represented, and it does not rest upon any right peculiar to a candidate for office. The primary right of a citizen, taxpayer, and voter to equality

of representation in the lawmaking bodies in accordance with the Constitution is of greater dignity than his derivative right to be a candidate or even to be a representative. It is the primary rights of citizens that are violated by invalid statutes, which the court in a proper case, may protect by injunction or other process. The citizen possesses political as well as pecuniary and personal rights which may be the subject of an action to prevent the operation of unconstitutional legislation. It is not merely the right of the citizen under the Constitution to be fairly represented in the government, but also his right to prevent unequal and unconstitutional discrimination against his own in favor of other districts, that enables the court to intervene. Every citizen, taxpayer, and voter has an undoubted right to have the districts for representatives and senators created in accordance with the Constitution. It is not enough that one district may be of the proper size theoretically so long as other districts are given greater representation than is warranted by the Constitution and their population. The discrimination is just as real and just as wrong whether it be based upon a denial of representation to one locality or be founded upon excessive representation given to another. Indeed, it necessarily operates to bring about both results, and in either case the constitutional standard of equality is destroyed. The people are entitled to have the districts defined in accordance with the Constitution, and comparisons to test that objective must be made according to the facts, and not by the hypothetical unit. If one district is approximately the size that all districts should be, and another district with half the population is given the same or greater representation the result is inequality in the Legislative Assembly. The rights of the whole state are linked up with the representation of the several districts. We entertain no doubt of the right of the plaintiff to invoke the power of the court to protect his constitutional rights. Authorities, supra. Cf. Státe ex rel. La Follette v. Kohler, 200 Wis. 518, 228 N. W. 895, 69 A. L. R. 348.

Section 33 of the Constitution reads:

"The first general assembly, after the adoption of this Constitution shall divide the state into thirty-eight senatorial districts, and one hundred representative districts, as nearly equal in population as may be without dividing any county, except where a county may include more than one district, which

district shall constitute the senatorial and representative districts for ten years. Not more than two counties shall be joined together to form a represenative district: Provided, In doing so the principle requiring every district to be as nearly equal in population as may be shall not be violated. At the expiration of that time, the general assembly shall then, and every ten years thereafter, redistrict the state according to this rule, and for the purposes expressed in this section. If, in making said districts inequality of population should be unavoidable, any advantage resulting therefrom shall be given to districts having the largest territory. No part of a county shall be added to another county to make a district, and the counties forming a district shall be contiguous.

Pursuant to that mandate, the Legislature districted the state in 1893, creating one hundred representative and thirty-eight senatorial districts. Acts 1891-92-93, c. 235, p. 1204. The Constitution directs that a redistricting be made every ten years, but the first redistricting act was not passed until March 23, 1906. Acts 1906, c. 139, p. 472. That act was before this court in Ragland v. Anderson, 125 Ky. 141, 100 S. W. 865, 30 Ky. Law Rep. 1199, 128 Am. St. Rep. 242, and it was held unconstitutional and declared void. No further legislation upon the subject was enacted until 1918, when new legislative and senatorial districts were defined. Acts of 1918, c. 3, p. 6; Act of 1918, c. 45, p. 134. The acts of 1918 were based upon the federal census of 1910, and were accepted by the people without question. The next legislation upon the subject was in 1930, when the acts now challenged were passed. Chapter 147 of the Acts of 1930 defined one hundred representative districts, but no change was made in any of the districts as defined in the act of 1918, except those situated in Jefferson county. The newly defined districts were these: No. 51, containing 49,552 population; No. 52, containing 16,846 population; No. 53, containing 27,389 population; No. 54, containing 60,457 population; No. 55, containing 44,123 population; No. 56, containing 56,914 population; No. 57, containing 45,176 population; and No. 58, containing 51,-012 population.

The population of Kentucky, according to the federal census of 1920, was 2,416,630. The unit to be applied as the basis for the formation of one hundred represen-

tative districts would be 24,166. Adopting the method and applying the principle adopted and applied in the case of Ragland v. Anderson, supra, we take for comparison one group of twelve smaller districts and the same number assembled from the larger districts. The result is:

| Group 1 (12 Smallest) Legislative District | Population by 1920 Census |
|---|---|
| 6 Caldwell | 13,975 |
| 18 McLean | 12,502 |
| 27 Simpson | 11,150 |
| 32 Meade | 9,442 |
| 45 Anderson | 9,982 |
| 43 Boyle | 14,933 |
| 46 Woodford | 11,784 |
| 47 Jessamine | 12,205 |
| 48 Garrard | 12,503 |
| 59 Trimble and Oldham | 13,700 |
| 60 Gallatin and Carroll | 13,010 |
| 70 Nicholas and Robertson | 13,765 |
| Total Population | 148,951 |
| Average District | 12,412 |
| Constitutional Average | 24,166 |

Twelve districts entitled to but six are in fact given twelve representatives.

| Group 2 (12 Largest) Legislative District | Census 1920 (Adjusted as to Louisville) |
|---|---|
| 4 McCracken | 37,246 |
| 14 Christian | 35,883 |
| 51 Jefferson and Louisville | 49,552 |
| 54 Jefferson and (Louisville) | 60,457 |
| 55 Jefferson and Louisville | 44,123 |
| 56 Jefferson and (Louisville) | 56,914 |
| 57 Jefferson and (Louisville) | 45,176 |
| 58 Jefferson and (Louisville) | 51,012 |
| 81 Laurel and Rock Castle | 35,220 |
| 92 Pike | 49,477 |
| 97 Letcher and Perry | 50,509 |
| 98 Leslie and Harlan | 41,643 |
| Total Population | 557,212 |
| Average District | 46,434 |
| Constitutional Average District | 24,819 |

Twelve districts given only twelve representatives instead of twenty-two, to which they were entitled.

In order to get exact figures, it was necessary to consider a special census taken in the city of Louisville in 1925. It was taken by precincts, and its accuracy is admitted. The figures of the 1920 federal census could not be applied to the new legislative districts, because that census had been taken according to wards, which had been changed in 1922 so that the proposed new district lines intersected some of the wards in which the census was taken. The results, however, are so nearly identical that it is practically immaterial. The act of 1918, which remains in force until a new constitutional redistricting act is passed, was based upon the federal census of 1910. The validity of that redistricting was not questioned, and may not be questioned at this late day. Adams v. Bosworth, 126 Ky. 61, 102 S. W. 861, 31 Ky. Law Rep. 518, 10 L. R. A. (N. S.) 1184. Inequalities in many instances were present in that act, but it was accepted by the people and all parties concerned. The inequalities therein are accentuated by the readoption in 1930, except for the county of Jefferson, of the very same apportionment that was made by the act of 1918. The inequalities are made even more glaring by the federal census for 1930, but it is not to be considered in the disposition of the present cases. During the twenty years that elapsed from 1910 until the passage of the act of 1930, the population had shifted; many of the smaller districts registering no substantial increase, while others showed a decrease in population. Some of the larger districts exhibited a large increase in population. The districts defined by the act of 1930 could not be justified upon the ground that they followed the act of 1918 in all districts outside of Jefferson county. Such a re-enactment was not a decennial redistricting according to population and area as contemplated by the Constitution. The 1918 act had to be tested according to the census of 1910, upon which it was based, while the acts passed in 1930 must be measured by the census of 1920. A material difference results in most, if not all, of the districts. It will be seen from the tables already given that a wide variance was apparent in the population of the Jefferson county districts, running from 16,846 in one to 60,457 in another. It is obvious on the face of the figures that no attempt was made to redistrict Jefferson county into districts as nearly equal as may be. Exactitude is not to be expected. Approximation is the rule erected by the Constitution, but the Legislature may not escape the

duty of approximation imposed by the Constitution on the ground that mathematical precision is not attainable. The opinion of this court in Ragland v. Anderson, 125 Ky. 141, beginning on page 158, 100 S. W. 865, 869, 30 Ky. Law Rep. 1199, 128 Am. St. Rep. 242, dealt with that very question in these words:

"It is not insisted that the equality of representation is to be made mathematically exact. This is manifestly impossible. All that the Constitution requires is that equality in the representation. of the state which an ordinary knowledge of its population and a sense of common justice would suggest. We have not been referred to a more accurate or or better description of the equality required by the Constitution than that contained in the report of Daniel Webster, as chairman of a senatorial committee engaged in a duty similar to that involved in the act under discussion: 'The Constitution, therefore, must be understood, not as enjoining an absolute relative equality, because that would be demanding an impossibility, but as requiring Congress to make an apportionment of representatives among the several states, according to their respective numbers, as nearly as may be. That which cannot be done perfectly must be done in a manner as near perfection as can be. If exactness cannot, from the nature of things, be attained, then the nearest practicable approach to exactness ought to be made. Congress is not absolved from all rule, merely because the rule of perfect justice cannot be applied. In such a case approximation becomes a rule. It takes the place of the other rule, which would be preferable, but which is found inapplicable, and becomes itself an obligation of binding force. The nearest approximation to exact truth or exact right, when that exact truth or exact right cannot be reached, prevails in other cases, not as a matter of discretion, but as an intelligible and definite rule, dictated by justice, and conforming to the common sense of mankind—a rule of no less binding force in cases to which it is applicable, and no more to be departed from than any other rule.'

"The definition of equality of representation as above contained, and the principle that any act of the Legislature, which violates a constitutional requirement for that equality of representation, is

void, is sustained by the following authorities. State v. Cunningham, 83 Wis. 90, 53 N. W. 35, 17 L. R. A. 145, 35 Am. St. Rep. 27; Williams v. Secretary of State, 145 Mich. 447, 108 N. W. 749; Denney et al. v. State, 144 Ind. 503, 42 N. E. 929, 31 L. R. A. 726; Harmison v. Ballot Commissioners, 45 W. Va. 179, 31 S. E. 394, 42 L. R. A. 591; State v. Wrightson, 56 N. J. Law 126, 28 A. 56, 22 L. R. A. 548; Giddings v. Secretary of State, 93 Mich. 1, 52 N. W. 944, 16 L. R. A. 402; Parker v. State, 133 Ind. 178, 32 N. E. 836, 33 N. E. 119, 18 L. R. A. 567; Board of Sup'rs of County of Houghton v. Blacker, Secretary of State, 92 Mich. 638, 52 N. W. 951, 16 L. R. A. 432; State v. Cunningham, 81 Wis. 440, 51 N. W. 724, 15 L. R. A. 561; People v. Thompson, 155 Ill. 451, 40 N. E. 307; People v. Rice, 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836; Baird v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81. He has studied our Constitution in vain who has not discovered that the keystone of that great instrument is equality— equality of men, equality of representation, equality of burden, and equality of benefits. Section 1 of Bill of Rights provides: 'All men are by nature free and equal. . . .' Section 3: 'All men, when they form a social compact are equal. . . .' Section 33 provides for equality of representation. Sections 171, 172, 173, and 174 provide for equality of taxation (uniformity). Section 39 provides for equality (general) of laws. Indeed, it could not be otherwise, for when our forefathers emigrated from their European home it was in the main to escape from the oppression of inequality. They brought with them a burning love for this great democratic principle, and embodied it deep in the foundation of the empire they were destined to erect, and which they will preserve so long as the love of liberty is more than a name. When they threw off the supervising government of the mother country, it was because they were denied equality of representation; or, as they then expressed the evil, they had imposed upon them taxation without representation."

The Constitution, in all of its terms, breathes the spirit of command (Varney v. Justice, 86 Ky. 596, 6 S. W. 457; 9 Ky. Law Rep. 743; McCreary v. Speer, 156 Ky. 783, 162 S. W. 99), and, while the people must depend upon the patriotism and consciences of the legislators,

under the pressure of a sound public opinion, for the enactment of laws to accord with constitutional mandates, yet it is within the province and the power of the courts to declare void and ineffective for any purpose all acts of the General Assembly in violation of an express provision of the Constitution.

The only conclusion to be drawn from the figures which we have inserted in this opinion, and from further examples that might be adduced from the entire state is that the act of 1930 respecting representative districts did not conform to section 33 of the Constitution. The inequality is so glaring that it repels any presumption that the legislation constituted a fair approximation of what was required by the fundamental law. It represents an instance where fair-minded men can entertain no doubt that the inequality of representation is grave, unreasonable, and unnecessary. McGlue v. Essex County Commissioners, 225 Mass. 59, 113 N. E. 742. The circuit court was correct in holding that chapter 147 of the Acts of 1930 was unconstitutional and void. The necessary result is to reinstate the representative districting act of 1918, which will continue in force until the Legislature enacts a law in compliance with section 33 of the Constitution. Ragland v. Anderson, supra. The judgment properly required the county clerk to act accordingly.

2. There are four senatorial districts in Jefferson county. According to the federal census of 1920, each senatorial district should contain approximately 65,000 people. Thirty-eight districts are to be created, and the total population of the state in 1920 was 2,471,630. The population of Jefferson county by the census of 1920 was 289,369, which would make 71,592 the unit of population for each of the four districts. As a matter of fact, the Twenty-Third senatorial district in that county contains 64,658, the Thirty-Sixth district contains 84,841, the Thirty-Seventh district contains 73,680, and the Thirty-Eighth district contains 128,595. It will be seen that the Thirty-Eighth district contains about twice as many people as the Twenty-Third district. The Thirtieth senatorial district, composed of Harrison, Nicholas, Bracken, and Robertson counties has a population of 39,210; the Twenty-Second senatorial district, composed of Jessamine, Scott, and Woodford, has a population of 39,307; the Fourth senatorial district, composed of Livingston, Crittenden, and Union, has a population of 40,897; the Fifth senatorial district has 48,371 popula-

tion, and is composed of the counties of Henderson and Webster. This group of districts with the smallest population is given eight senators when entitled to less than six.

The group of larger senatorial districts shows the following figures: 35 (Boyd, Lawrence, Johnson, and Martin) 74,060; 33 (Harlan, Letcher, Perry, Leslie, and Clay) 111,947; 24 (Kenton) 73,453; 13 (Pike, Floyd and Knott) 88,559; 17 (Knox, Laurel, and Bell) 77,984; 15 (Pulaski, Whitley, and McCreary) 73,435; 29 (Rockcastle, Jackson, Estill, Madison, and Owsley) 76,766.

The figures for the Jefferson county districts have been given already. It may be noted here that the Thirty-Third senatorial district according to the census of 1930 had a population of 171,736. By this same census the Thirtieth district had only 36,390. We find a variation in the senatorial districts ranging from 39,210 population in the smallest to 128,595 people in the largest. The group of large districts are given only eleven, while the population entitles them to thirteen senators.

The Twenty-Sixth senatorial district composed of Owen, Grant, Pendleton, and Boone, has a population of 48,944. The Twenty-Eighth (Bourbon, Clark, and Montgomery) has 48,197, the Ninth (Logan, Simpson, and Todd) has 50,477, and the Twelfth (Hardin, Larue, Bullitt, and Meade) has 53,051, population.

It is apparent and indeed not denied that the apportionment violates section 33 of the Constitution. The chancellor did not sustain the validity of the act, but held that the plaintiff, who lived in the Thirty-Seventh senatorial district, was not discriminated against because his district contained only 11 per cent. more people than the hypothetical unit which constituted the correct basis of apportionment. But, as we have seen, a citizen, taxpayer, and voter is entitled to have the entire state apportioned in accordance with the Constitution, and comparison of results must be made with the actual, and not with the hypothetical, figures. Comparing Reager's district containing 73,680 people with the smallest district containing only 39,210, we find a variation so unreasonable, unnecessary, and unequal as to forbid any presumption that the fairest results possible have been attained. Furthermore, the invalid act should not be left in the way of a proper redistricting in the future. The inequalities are glaring and compel the conclusion that the act was void and ineffective for any purpose. If the state

as a whole was fairly divided into senatorial districts, the Thirty-Seventh district in which Reager resides might not vary as much as 11 per cent from the basic factor.

It follows that the circuit court erred in not adjudging chapter 148 of the Acts of 1930 invalid, and a judgment similar to that rendered in the Schardien Case must be entered in this one.

3. We are constrained to the conclusion that the circuit court was correct in the disposition made of the case of Blair v. Lewis and others. Conceding that the plaintiff had a right to maintain the suit, it was nevertheless necessary for him to sue some one who had some duty to perform respecting the enforcement and practical operation of chapters 147 and 148 of the Acts of 1930. Neither the Secretary of State nor the state board of election commissioners had any such duty to perform. Axton v. Goodman, 205 Ky. 382, 265 S. W. 806. The Attorney General had published the Acts of 1930 months before the suit was filed and his duty had been discharged. Revis v. Daugherty, Attorney General, 215 Ky. 823, 287 S. W. 28. The duties of the Secretary of State would be the same under the acts of 1918 and the acts of 1930, and there was no basis for an injunction against that officer. Blair failed to manifest to the court how any relief could be granted against any of the defendants to his suit; hence its dismissal on demurrer was proper.

We recognize that great difficulty and delicacy attends the performance of the duties imposed upon the General Assembly by section 33 of the Constitution, but the rule of approximation does not admit of such flagrant departures from equality as was manifested by the acts of 1930. Equality of representation in the legislative bodies of the state is a right preservative of all other rights. The source of the laws that govern the daily lives of the people, the control of the public purse from which the money of the taxpayer is distributed, and the power to make and measure the levy of taxes, are so essential, all-inclusive, and vital that the consent of the governed ought to be obtained through representatives chosen at equal, free and fair elections. If the principle of equality is denied, the spirit, purpose, and the very terms of the Constitution are emasculated. The failure to give a county or a district equal representation is not merely a matter of partisan strategy. It rises above any question of party, and reaches the very vitals of democracy.

itself. The citizens of McCracken, Pike, Jefferson, and other large counties denied equal representation are deprived of their constitutional rights regardless of party affiliation. The Constitution is not concerned with election returns, but contemplates equal representation based upon population and territory. Its requirements may not be satisfied with less than such equality of representation as common justice and ordinary knowledge of our territory and population would suggest. Ragland v. Anderson, supra. No fair-minded man looking at the attempted redistricting of the state can entertain the slightest doubt that such inequality is unreasonable and unnecessary. The plain mandate of the Constitution has been disregarded. Equality of representation in the lawmaking tax-levying bodies is a fundamental requisite of a free government, and no unbiased, fair, or just man has any right to claim a greater share of the voting power of the people than is granted to every other man similarly situated. It is vain for the people to hope for reforms of abuses or righteous results in legislation if the legislative bodies are not fairly representative of the spirit, purpose, and will of all the people, without discrimination. Civilization does not consist merely in material achievement, in the accumulation of wealth, or in advancement in culture, science, and knowledge, but also in the doing of equal and exact justice, and, if justice does not prevail in the administration of the law and in the distribution of the powers and privileges of government, our civilization is but an idle boast, doomed to decay and destruction. From the ruins of all the ancient states along the bloody trail of the tyranny that has terrorized humanity in its onward struggle for freedom and right blazes forth the living truth that nothing founded upon injustice can permanently endure. The security of the people depends on strict adherence to the admonition found in Proverbs: ''Remove not the ancient landmark which thy fathers have set.''

The judgment in the case of Stiglitz v. Schardien, is affirmed.

The judgment in the case of Reager v. Stiglitz, is reversed, with directions to enter a judgment in accordance with this opinion.

The judgment in the case of Blair v. Lewis and others is affirmed.

Since the primary election must be held on the first Saturday in August, it is ordered that the mandates

herein be issued immediately, but without prejudice to the rights of the parties concerned to file petitions for rehearing. Clark v. Robinson, 159 Ky. 33, 166 S. W. 801; Allen v. Griffith, 160 Ky. 621, 170 S. W. 33.

The whole court sitting.