Richardson v. McChesney, Sec'y of State.

---

CASE 37.—ACTION BY CHARLES RICHARDSON AGAINST H V. McCHESNEY, SECRETARY OF STATE, TO TEST THE VALIDITY OF THE ACT OF 1890 AND 1898, DIVIDING THE STATE INTO CONGRESSIONAL DISTRICTS.—March 11.

## Richardson v. McChesney, Sec'yof State

Appeal from Green Circuit Court.

I. H. Thurman, Circuit Judge.

From the judgment plaintiff appeals.—Affirmed.

1. Constitutional Law — Distribution of Powers — Judicial Functions—Political Questions.—A legislative apportionment of the State into congressional districts cannot be judicially reviewed. in the absence of a constitutional provision controlling apportionment.

2. United States — Congressional Apportionment of Districts.— The Constitution of the United States contains no direction to the States on the matter of apportionment of the State into congressional districts.

3. Same.—There is nothing in the State Constitution as to the

Richardson v. McChesney, Sec'y of State.

manner of the apportionment of the State into congressional districts.

GEO. DU RELLE, E. L. WORTHINGTON and W. C. HALBERT of counsel.

WM. H. HOLT for plaintiff.

POINTS AND AUTHORITIES.

1. "Apportioned among the several states"—Representatives.— Although the Constitution has declared that representatives shall be apportioned among the states according to their respective federal numbers, and for this purpose it has expressly authorized Congress by law to provide for an enumeration of the population every ten years, yet the power to apportion representatives after this enumeration is made, is nowhere found among the express powers given to Congress, but it has always been acted upon as irresistibly flowing from the duty positively enjoined by the Constitution." (Prigg v. Pennsylvania, (1843) 16 Pet., (U. S.) 619; 8 Fed. Statutes Annotated, p. 303.)

4. Power to district a state. "The power to district a state, in accordance with the federal apportionment, is, by sec. 4 of art. 1 of the Constitution of the United States, conferred upon the state, subject to the control of Congress, whereas, the power to fix or alter the number of members of the House of Representatives of the United States is vested exclusively in the federal government; * * * (Segar, 2 Bart. Bl. Cas. 810; 8 Fed. Stat. Annotated, p. 318.)

. CITATIONS.

Giddings v. Blacker, 93 Mich., 1; Parker Case, 133 Ind., 178; Williams Case, 108 N. W., 749; Siebold Case, 100 W. S., 386; 2 A. & E. Encyc. (2d Ed.), 478; McPherson v. Blacker, 146 U. S., 1; Cyc. of L. & P., vol. 8, p. 798; Neal v. Young, 25 Ky. Law Rep., 186; Zimmerman-Brooks Case, 25 Ky. Law Rep., 2289; Ragland v. Anderson, Mch. 20, 1907; Purnell v. Mann, 105 Ky., 91; Civil Code, sec. 23.)

C. H. NOGGLE for appellee.

POINTS AND AUTHORITIES.

1. The Act of 1890 having been in force 17 years, and the Acts

Richardson v. McChesney, Sec'y of State.

of 1898 having been in force 9 years, and the government organ-
ized under them, it would throw the government into chaos to
now disturb them.   Individuals and political parties that have
seen the Acts in effect for years without objections will not be
heard at this late day to complain, or question their validity.
(Ragland v. Anderson, 100 S. W., 865, 30 Ky. Law Rep., 1199:
Adams v. Bosworth, 102 S. W., 861, 31 Ky. Law Rep., 518.)

2. The Acts in question do not violate any provision of the
Constitution of the State of Kentucky, or of the United States.

3. The Acts of Congress making apportionment of Representa-
tives in Congress are unconstitutional and void in so far as they
require the Representative to be elected by districts.   Each State
has the right to say how and in what manner Representatives shall
be elected.

4. The court is allowed to look at and consider the effect of
their decision in a case of this kind, and if the effect of such a
decision would be to disarrange the government; or to throw it
into chaos, their decision should be if possible such as to prevent
such a result.   (The People v. Rice, 135 N. Y. 473, 16 Ky. Law
Rep., 852.)

5. The Legislature has a large discretion in making appor-
tionments; and they cannot be overthrown because they are not
distributed with mathematical accuracy.   (The People, v. Rice,
135 N. Y., 16 L. R. A., 852; Wise v. Bigger, 79 Va., 269.)

6. The Acts of 1890 and 1898 are open to less criticism than is
the Act of 1882.

OPINION OF THE COURT BY JUDGE CARROLL—Affirm-
ing.

This suit was brought by appellant for the purpose
of having declared invalid the act of 1890 and the acts
of 1898 dividing the State into congressional districts.

In 1890 the General Assembly by an act approved
May 26th( Acts 1889-90, p. 166, ch. 1835), laid off the
State into 11 congressional districts.   In 1898, by an
act approved March 12th, Acts 1898, p. 175, ch. 67), the
counties of Cumberland and Monroe were taken from
the Third congressional district and added to the Elev-
enth district, and the county of Metcalf was taken
from the Eleventh congressional district and added to

the Third congressional district. By an act approved
March 11, 1898 (Acts 1898, p. 179, ch. 69), the county
of Jackson was transferred from the Eighth to the
Eleventh congressional district. The chief objection
is to the apportionment made under the act of 1890.
The ground upon which these acts were assailed is
that the population of the districts is grossly unequal;
the effect being to deny to the Republican party, who
are the instigators of this suit, a fair and equal repre-
sentation in the distribution of the State into congres-
sional districts. In short, the charge in effect is that
the State was "Gerrymandered" in the interest of the
Democratic party. The apportionment complained of
was made under the census of 1880. The census of
1890 had not been completed when it was made. The
population of the State under the census of 1880 was
1,649,690, which, divided by 11, would make the popu-
lation of each district 149,881. The petition sets out
that the population of the several districts in 1880 was
as follows:

First   District...........................149,740
Second      "    ...........................152,960
Third       "    ...........................156,658
Fourth      "    ...........................188,124
Fifth       "    ...........................146,010
Sixth       "    ...........................144,160
Seventh     "    ...........................130,003
Eighth      "    ...........................128,656
Ninth       "    ...........................164,985
Tenth       "    ...........................114,024
Eleventh    "    ...........................172,630

It will thus be seen that the population of the dis-
tricts is not grossly unequal when compared with the
apportionment, but this question is not material in the
disposition of the case, as we are of the opinion that

it is not within the power of the courts to control the
legislative department in the creation of congressional
districts.   There is no mention of congressional dis-
tricts in the Constitution of the State; nor is there
in that instrument any direction to the General Assem-
bly as to how the districts shall be laid off.   In the
matter of dividing the State into congressional dis-
tricts the Legislature, at least so far as the power and
authority of this court extends, is supreme.   This
court has no control over its action.   It would be ex-
ceeding the power granted us to undertake to revise
or annul a legislative act relating to a subject over
which the Legislature has absolute control.   Except
when limited by the Constitution of the State, the Gen-
eral Assembly, especially in administrative and politi-
cal affairs, is beyond the reach of the judiciary of the
State.   We have no authority to pass judgment upon
its acts.   In no case that has come under our notice
have the courts undertaken to attempt to restrain the
legislative departments, unless it violated some pro-
vision of the organic law of the State.   If, in the mat-
ter of dividing the State into congressional districts,
this court should undertake to declare invalid the ap-
portionment made by the legislative department, it
would simply result in setting up our judgment against
the judgment of the members elected for the purpose
of performing this duty.   We would be putting up our
opinion against those in whom the exclusive right to
regulate this matter has been lodged, and be arrogat-
ing to ourselves wisdom, honesty, and fairness supe-
rior to those charged by law with the control of these
matters.   Moore v. City of Georgetown, 127 Ky. 409,
105 S. W. 905, 32 Ky. Law Rep. 323.   When the Legis-
lature has exceeded its legitimate powers by enacting
laws in conflict with the Constitution or that are pro-

hibited by it, we have not hesitated to interpose the
veto power lodged in the judiciary for the purpose of
preserving the integrity of the organic law under
which all departments of the State government were
created and live, and to which all of them owe obedi-
ence. And so, when the General Assembly in the
division of the State into senatorial and legislative
districts grossly violated that provision of the Consti-
tution directing that the districts should be "as nearly
equal in population as may be," we exercised the
power vested in the judiciary to protect from invasion
by whatever source the fundamental law of the State,
and declared the act invalid. Ragland v. Anderson,
125 Ky. 141, 100 S. W. 865, 30 Ky. Law Rep. 1199.
But in the matter of congressional districts we find
nothing in our State Constitution to guide us. There
is nowhere any limitation upon the power of the Legis-
lature, and it would be assuming authority this court
does not possess if we undertook to control a co-ordi-
nate department of the government in the perform-
ance of a power vested exclusively in it. It is not for
the judiciary to question the policy, expediency, or
propriety of laws enacted by the General Assembly,
unless they conflict with the Constitution. Judge
Cooley in his work on Constitutional Limitations, p.
200, thus states with great force and clearness the pre-
vailing doctrine upon this subject: "The moment a
court ventures to substitute its own judgment for that
of the Legislature in any case where the Constitution
has vested the Legislature with power over the sub-
ject, that moment it enters upon a field where it is
impossible to set limits to its authority, and where
its discretion alone will measure the extent of its inter-
ference. The rule of law upon this subject appears to
be that, except where the Constitution has imposed

limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the State, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fails, the people in their sovereign capacity can correct the evil; but courts can not assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. It can not run a race of opinions upon points of right, reason, and expediency with the lawmaking power. Any legislative act which does not encroach upon the power apportioned to the other departments, being prima facie valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the Constitution, and the case shown to come within them.''

Nor do we find in the Constitution of the United States any direction to the States upon this subject. The only provisions in that instrument relating to it are these: Section 4, article 1, provides ''the time, places and manner of holding elections for senators and representatives shall be prescribed in each State by the Legislature thereof, but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators.'' And the fourteenth amendment provides: ''Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed.'' It will thus be seen that the Constitution of

the United States has left matters relating to congressional districts to the disposition of the States. Nor has the Congress of the United States undertaken to legislate upon the subject, except to provide "that the number of congressmen to which each State may be entitled in Congress shall be elected by districts composed of contiguous territory and containing as nearly as practicable an equal number of inhabitants. The said districts shall be equal to the number of representatives to which such State may be entitled in Congress, no one district electing more than one representative." What right, if any, Congress has to control or supervise the action of State Legislatures in the division of the States into congressional districts, we need express no opinion in the absence of a judicial determination by the Supreme Court of the United States of the power of Congress to control the States in this matter.

Wherefore the judgment of the lower court is affirmed.