**WATTS v. O'CONNELL, Secretary of State.**

Court of Appeals of Kentucky.

March 28, 1952.

B. T. Moynahan, Jr., Nicholasville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Jo M. Ferguson, Ass't. Atty. Gen., for appellee.

SIMS, Justice.

John C. Watts, a resident and citizen of Kentucky and now a representative in Congress who intends to be a candidate to succeed himself, suing on behalf of himself and all other citizens and candidates similarly situated, brought this declaratory action against Charles K. O'Connell, Secretary of State. The petition avers that House Bill 400 which became effective on March 6, 1952, in reapportioning the State into 8 congressional districts violated section 6 of our Constitution, as well as an Act of Congress relating to the reapportionment of congressional districts.

Appellee's answer contained pleas in the nature of special and general demurrers, and averred he intended to perform his duties in accordance with the provisions of the Act. The case was submitted to Honorable Leslie W. Morris, special judge, who upheld the validity of the Act.

At the outset we wish to say that the case has been thoroughly briefed and capably argued, consequently the labors of the court have been greatly reduced.

The population and area of each district are set out in the petition which specifically charges that the General Assembly in the reapportionment disregarded contiguity and compactness of territory, and that each district should contain as nearly as practicable an equal number of inhabitants. The Act of Congress of August 8, 1911, 2 U.S.C.A. § 3, providing for the apportionment of representatives in states reads: "In each State entitled under this apportionment to more than one Representative, the Representatives to the Sixty-third and each subsequent Congress shall be elected by districts composed of a contiguous and compact territory, and containing as nearly as practicable an equal number of inhabitants. The said districts shall be equal to the number of Representatives to which such State may be entitled in Congress, no district electing more than one Representative."

On June 18, 1929, Congress passed a new Reapportionment Act, which was amended June 25, 1942, 2 U.S.C.A., § 2a, neither of which contain any requirements as to "compactness, contiguity and equality in population of the districts." In Wood v. Broom, 287 U. S. 1, 53 S.Ct. 1, 70 L.Ed. 131, Mr. Justice Hughes said that the Reapportionment Act

of 1929 did not carry forward the provisions of the Act of 1911, and while it did not expressly repeal them, no repeal was necessary. He there wrote that the terms of the Act and its legislative history show the Congress deliberately omitted from the Reapportionment Act of 1929 the requirements of "compactness, contiguity, and equality in population with respect to the districts" which were included in the 1911 Act. In not reenacting these provisions the Congress intended they should not outlast the reapportionment to which they related. Our court in Burchell v. State Board of Election Commissioners, 252 Ky. 823, 68 S. W.2d 427, took cognizance of the fact that Wood v. Broom held that compactness, contiguity and equality in population no longer apply in reapportioning congressional districts.

The same question was again raised in Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, (decided at the October Term 1945 after the 1942 amendment). Mr. Justice Frankfurter speaking for the court there approved what was written in Wood v. Broom. He gave a history of the Reapportionment Acts of Congress. We lift this from page 555 of 328 U.S., from page 1201 of 66 S.Ct., 90 L.Ed. 1435. "Throughout our history, whatever may have been the controlling Apportionment Act, the most glaring disparities have prevailed as to the contours and the population of districts." In giving the reason why courts do not correct these disparities he said at page 552 of 328 U.S., at page 1199 or 66 S.Ct., 90 L.Ed. at page 1434: "It (United States Supreme Court) has refused to do so because due regard for the effective working of our Government revealed this issue to be of a peculiarly political nature and therefore not meet for judicial determination."

■ Appellee insists that congressional redistricting is a political question and one not justiciable by the courts, and that the trial judge so held. We do not so construe his judgment. He took jurisdiction of the case and upheld the Act because it violated no provision of the State or Federal Constitutions. True, he said reapportionment of congressional districts in the State is a

question vested in the discretion of the General Assembly and one with which courts are not concerned. With this we are in full accord except where the redistricting does violence to some provision of the Constitution or an Act of Congress.

In Richardson v. McChesney, Secretary of State, 128 Ky. 363, 108 S.W. 322, 323, there was before this court the question of the action of the General Assembly in reapportioning the congressional districts. The opinion pointed out that no mention is made of congressional districts in our Constitution and neither it nor the Federal Constitution directs the General Assembly how they should be laid off. It was there written that in the manner of dividing the State into congressional districts the General Assembly is supreme, except when limited by the Constitution of the State. Judge Carroll there wrote: "When the Legislature has exceeded its legitimate powers by enacting laws in conflict with the Constitution or that are prohibited by it, we have not hesitated to interpose the veto power lodged in the judiciary for the purpose of preserving the integrity of the organic law under which all departments of the state government were created and live, and to which all of them owe obedience."

This very principle of which Judge Carroll wrote had been previously put into effect in Ragland v. Anderson, 125 Ky. 141, 100 S.W. 865, which held an Act of the General Assembly dividing the State into senatorial and legislative districts violated section 33 of our Constitution. That section provides that the General Assembly will create 28 senatorial and 100 legislative districts "as nearly equal in population as may be". The Redistricting Act of 1906 (chapter 139, page 472 Acts of that year) created one legislative district of 3 counties with a population of 53,263 and a combined area of 1241 square miles, and another legislative district of a single county with a population of only 7,407 and 204 square miles. The opinion held this Act violated section 33.

■ Appellant bottoms his case on section 6 of our Constitution, "all elections must be free and equal." He argues that because the first district contains 304,978

people while the third has 484,615, this dilutes and minimizes the voting franchise of those persons living in the more populous district and emphasizes and magnifies that of those residing in the less populous one. We rejected a somewhat similar argument in Karloftis v. Helton, 297 Ky. 463, 178 S. W.2d 959. The Supreme Court of Illinois in Daly v. Madison County, 378 Ill. 357, 38 N.E.2d 160, in dealing with the same character of argument made here concerning a section of the Illinois Constitution which is practically the same as our section 6 said on page 167 of 38 N.E.2d: "Absolute equality cannot be attained. To argue that this section, in all cases, requires that such districts be equal in population so that every vote cast in one district would have the same effect as every vote cast in every other district, is to assert a millennium which cannot be reached."

The judgment is affirmed.