Charles BAKER et al., Plaintiffs,

v.

Joe C. CARR et al., Defendants.

Civ. A. No. 2724.

United States District Court
M. D. Tennessee,
Nashville Division.

Dec. 21, 1959.

See also D.C., 175 F.Supp. 649

Denney, Leftwich & Osborn, Nashville, Tenn., Hobart Atkins, Knoxville, Tenn., Chandler, Manire & Chandler, Memphis, Tenn., for plaintiff.

George McCanless, Atty. Gen. of State of Tennessee, Allison B. Humphreys, Sol. Gen., State of Tennessee, Nashville, Tenn., for defendant.

Robert H. Jennings, Jr., Harris Gilbert, Nashville, Tenn., for City of Nashville, Tenn.

J. W. Anderson, City Atty., E. K. Meacham, Chattanooga, Tenn., for City of Chattanooga, Tenn.

Before MARTIN, Circuit Judge, and BOYD and MILLER, District Judges.

## PER CURIAM.

The original plaintiffs and intervening plaintiffs, citizens and qualified voters residing in different areas of Tennessee, seek to challenge in this action under the equal protection and due process clauses of the Fourteenth Amendment the existing legislative apportionment in Tennessee. Briefly summarized, the contentions of the plaintiffs [1] are as follows:

The Constitution of Tennessee (Article 2, Sections 4, 5 and 6) directs the legislature at the expiration of each 10-year period after 1871 to make an enumeration of the qualified voters and to apportion the members of the legislature among the several counties or districts according to the number of qualified voters therein. It provides for 99 members of the House of Representatives and 33 members of the Senate. Despite the mandatory requirements of the state constitution, no reapportionment has been enacted by the legislature since the Act of 1901, Acts 1901, c. 122, and even that Act was passed without the enumeration of voters required by the Constitution of the State. Although persistent demands have been made upon the legislature to reapportion the state for legislative purposes in accordance with the constitutional command, and although numerous bills have been introduced in the legislature to accomplish this purpose, the distribution of legislative seats remains as provided for in the Act of 1901. Such legislative distribution is grossly disproportionate to the distribution of population in the state, a condition brought about by shifts or changes in population since 1901. The inevitable result of this violation of the constitutional mandate is a gross inequality of legislative representation, a debasement of the voting rights of large numbers of citizens, and hence a denial of the equal protection of the law guaranteed by the Fourteenth Amendment. Illustrating the inequality, it is pointed out that a minority of approxi-

1. In this opinion the term "plaintiffs" will include both the original plaintiffs and the intervening plaintiffs. After the original complaint was filed other parties were allowed to intervene as plaintiffs, including the Mayor of the City of Nashville.

mately 37 per cent of the voting population of the state now controls 20 of the 33 members of the Senate. It is further alleged that such inequality of representation has resulted in continuous and systematic legislative discrimination against the plaintiffs and others similarly situated with respect to the allocation of the burdens of taxation and the distribution of funds derived from the state through the exercise of the taxing power, notably funds for the support of the public schools, the maintenance of roads and highways and other purposes.

Named as defendants in the action are the Secretary of State, the Attorney General, the Co-ordinator of Elections, and the Members of the State Board of Elections. No remedy is sought by the plaintiffs which would contemplate direct action against the state legislature or its members to require them to reapportion the legislative districts. Specifically, the plaintiffs request that the Court declare unconstitutional the legislative Reapportionment Act of 1901 as well as the Code provisions of Tennessee, T.C.A. § 3–101 et seq. implementing that Act as being violative of the equal protection and due process clauses of the Fourteenth Amendment, and that the Court then either (a) require by injunction that the defendants take necessary steps to hold an election by means of which the members of the next legislature would be elected from the state at large without regard to counties or districts, or (b) direct the defendants to hold an election by means of which the members of the legislature would be elected from counties and districts in accordance with the constitutional formula by applying mathematically the federal census of 1950.

The action is presently before the Court upon the defendants' motion to dismiss predicated upon three grounds: first, that the Court lacks jurisdiction of the subject matter; second, that the complaints fail to state a claim upon which relief can be granted; and third, that indispensable party defendants are not before the Court.

The question of the distribution of political strength for legislative purposes has been before the Supreme Court of the United States on numerous occasions. From a review of these decisions there can be no doubt that the federal rule, as enunciated and applied by the Supreme Court, is that the federal courts, whether from a lack of jurisdiction or from the inappropriateness of the subject matter for judicial consideration, will not intervene in cases of this type to compel legislative reapportionment. Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432; Cook v. Fortson and Turman v. Duckworth, 329 U.S. 675, 67 S.Ct. 21, 91 L.Ed. 596; Colegrove v. Barrett, 330 U. S. 804, 67 S.Ct. 973, 91 L.Ed. 1262; MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3; South v. Peters, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834; Remmey v. Smith, 342 U.S. 916, 72 S.Ct. 368, 96 L.Ed. 685; Anderson v. Jordan, 343 U.S. 912, 72 S.Ct. 648, 96 L.Ed. 1328; Kidd v. McCanless, 352 U.S. 920, 77 S.Ct. 223, 1 L.Ed.2d 157; Radford v. Gary, 352 U.S. 991, 77 S.Ct. 559, 1 L.Ed.2d 540.

In view of this array of decisions by our highest court, charting the unmistakable course which this Court must pursue in the instant case, it is unnecessary to consider decisions by lower federal courts. It is significant to point out that the case of Kidd v. McCanless, supra, involved the identical apportionment statutes and the identical state of facts with respect to apportionment of representatives in Tennessee, as the present action, the appeal in that case by the plaintiffs from the adverse decision of the Supreme Court of Tennessee being dismissed by the Supreme Court of the United States upon the authority of Colegrove v. Green, supra, and Anderson v. Jordan, supra. Moreover, the facts in the recent case of Radford v. Gary, supra, decided February 25, 1957, are substantially parallel to the facts of the present case. The plaintiffs attacked the existing legislative apportionment in Oklahoma, alleging inequalities in legislative representation and a consequent violation of the equal protection clause of the Fourteenth

Amendment. The relief sought was not only a mandatory injunction against the members of the legislature, but in the alternative that the members of the legislature be elected at large until constitutional reapportionment could be effected. A three-judge federal district court dismissed the action (Radford v. Gary, D. C., 145 F.Supp. 541) and the Supreme Court of the United States affirmed the judgment of the district court by a per curiam opinion upon the authority of Colegrove v. Green, supra, and Kidd v. McCanless, supra. The Court can find no way in the present case to escape the compelling authority of this ruling as well as the other rulings of the Supreme Court herein cited.[2]

The wisdom and soundness of the non-intervention rule consistently followed by the Supreme Court are strikingly pointed up when the question of an appropriate judicial remedy is considered. As stated, the plaintiffs do not even insist that the Court could or should take any direct action against the legislature itself, by mandamus or otherwise, to compel the individual members of the legislature to perform their constitutional duties to reapportion the state legislative seats. The suggested remedies are indirect in character. Kidd v. McCanless, 200 Tenn. 273, 292 S.W.2d 40, affirmed by the Supreme Court of the United States in Kidd v. McCanless, supra, holds that a declaration of unconstitutionality of the existing apportionment statute of Tennessee, without more, would result in a destruction of the state government itself, since the de facto doctrine would not be applicable to maintain the present members of the legislature in office and there would be no prior valid apportionment act to fall back upon. In view of this decision, the plaintiffs recognize that the Court, if it declared the existing apportionment statute unconstitutional, would be required to go further and devise an appropriate remedy so as to avoid a disruption of state government. However, the remedies suggested by the plaintiffs are neither feasible nor legally possible.

The alternative of an election at large is met with a number of insuperable objections. First, the Constitution of Tennessee specifically provides for the election of members of the legislature from counties and districts, and no provision whatever is made for a legislature composed of members elected at large.[3] It is true that the Constitution, art. 2, § 3 provides that the legislature of the state is "dependent on the people," but the power to direct an election at large cannot be inferred from such general language in the face of specific provisions for election from districts. Practical considerations also are heavily weighted against such a remedy. It would lead to serious geographical inequalities and other discriminations, probably to a greater extent than those presently existing. It would require the Court not only to provide for the supervision of the entire election but also to devise detailed rules and regulations under which such election should be held, a task which the courts are not equipped to undertake. Furthermore, even if a legislature should be constituted as the result of an election at large, the Court would have no control over it and would have no means of compelling such a legislature to redistrict the state in accordance with the constitutional mandate. An election at large, directed by the Court, would indeed inject the Court

---

2. The duty of the court to refuse intervention is not changed by allegations to the effect that various tax proceeds are allocated upon a discriminatory basis. Even if such general allegations could be accepted as showing specific results of existing legislative apportionment, they do not change the essential character of the controversy or the fundamental bases of the Supreme Court rulings refusing intervention.

3. Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795, and Koenig v. Flynn, 285 U.S. 375, 52 S.Ct. 403, 76 L.Ed. 805, relied on by plaintiffs for ordering an election at large, both dealt with the election of congressional representatives under a federal act providing for the election of representatives at large under certain conditions, and these cases are not in point here.

into a "political thicket", as stated in Colegrove v. Green, supra.

Equally objectionable would be an election held on the basis of an enumeration of voters in the various counties and districts of the state determined by the Court by applying the last federal census. The Constitution of the state vests the duty of making the enumeration in the legislature and not in the courts. Moreover, the redistricting of the state is required to be based upon an enumeration of the qualified voters and not upon population alone. The Court would have no way of knowing the number of qualified voters in the various districts. Such a remedy would constitute the clearest kind of judicial legislation and an unwarranted intrusion into the political affairs of the state.

It is strenuously argued by the plaintiffs that the case alleged in the complaint is one involving a clear violation of their individual rights guaranteed by the Fourteenth Amendment, and for this reason that the Court should in some way overcome its reluctance to intervene in matters of a local political nature and formulate a remedy which would adequately protect their rights. It is insisted that the wrong committed against them by the failure and refusal of the state legislature to abide by the state constitution is clear and unmistakable and that the courts should not leave such wrong without a remedy. With the plaintiffs' argument that the legislature of Tennessee is guilty of a clear violation of the state constitution and of the rights of the plaintiffs the Court entirely agrees. It also agrees that the evil is a serious one which should be corrected without further delay. But even so the remedy in this situation clearly does not lie with the courts. It has long been recognized and is accepted doctrine that there are indeed some rights guaranteed by the Constitution for the violation of which the courts cannot give redress. Some examples of such rights not appropriate for judicial relief were set forth by Mr. Justice Frankfurter in his opinion in Colegrove v. Green, supra:

"The Constitution has many commands that are not enforceable by courts because they clearly fall outside the conditions and purposes that circumscribe judicial action. Thus, 'on Demand of the executive Authority,' Art. IV, § 2, of a State it is the duty of a sister State to deliver up a fugitive from justice. But the fulfillment of this duty cannot be judicially enforced. Commonwealth of Kentucky v. Dennison, 24 How. 66, 16 L.Ed. 717. The duty to see to it that the laws are faithfully executed cannot be brought under legal compulsion, State of Mississippi v. Johnson, 4 Wall. 475, 18 L.Ed. 437. Violation of the great guaranty of a republican form of government in States cannot be challenged in the courts. Pacific States Telephone & Telegraph Co. v. State of Oregon, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377. The Constitution has left the performance of many duties in our governmental scheme to depend on the fidelity of the executive and legislative action and, ultimately, on the vigilance of the people in exercising their political rights." 328 U.S. at page 556, 66 S.Ct. at page 1201.

Being of the opinion that the Court has no right to intervene or to grant the relief prayed for, it is unnecessary to discuss the further ground of the motion that the action must fail because of the non-joinder of indispensable parties as defendants.

An order will be submitted dismissing the action in accordance with this opinion.