139 So.2d 353

**Frank J. LINDSAY**

v.

**STATE.**

**3 Div. 94.**

Court of Appeals of Alabama.
Dec. 12, 1961.

Rehearing Denied Jan. 9, 1962.

Geo. E. Trawick, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

CATES, Judge.

Lindsay asked the Circuit Court of Montgomery County for habeas corpus to examine his detention in Kilby Prison.

■ He claimed that his conviction, Lindsay v. State, Ala.App., 125 So.2d 716,* was void (1) because of the failure of the indictment to specify the purported bribery to have been of the police officers "in their official capacity" and (2) because the statute (Code 1940, T. 14, § 63) was the product of a legislature which had not been reapportioned as required by the Constitution of Alabama of 1901, and, therefore, the enactment of said statute with amendments in 1935 and presumably its codification in 1940 denied Lindsay due process and equal protection of the law.

What we said on Lindsay's appeal, 125 So.2d at 722, about the supposed fatal omission in the wording of the indictment suf-

fices here. Moreover, we consider habeas corpus cannot be grounded on such a claim.

■ The Constitution, in §§ 199 and 200, provides for the legislature at its first session after the 1910 census (and decennially thereafter) to fix the number of representatives and senators. House members, in § 199, are to be apportioned according to the population of the counties. Under § 200 senators are to be from districts "as nearly equal to each other in [population] as may be," etc.[1] Admittedly, this has not been done.

Lindsay's brief fails to elaborate on what consequence he would have us attach to the absence of reapportionment. Thus, we are left to speculate as to whether or not Code 1940, T. 14, § 63, is void because (1) it was amended by the 1935 Legislature, or (2) was codified in 1923 and again (with the amendment) in 1940. Also, we are left in doubt as to whether he thinks that the State has been without a legislature since 1911.

Probably all governments, at one time or another, have shown breaks from the past in which the theoretical chain of title to sovereignty is broken. Thus, while conquests and revolutions may be wrapped in legalisms, their bases rest on the fact of success. The pragmatic need of avoiding anarchy requires the presumption of legality.[2]

---

* Ante, p. 85.

1. It is to be noted that § 202, Const.1901, begins, "Until the legislature shall make an apportionment of representatives * * * the counties of * * * shall each have one representative * * *," etc. A like provision for senatorial districts appears in § 203.

2. The English Revolution of 1688 was ratified by a Parliament which extended the throne to William and Mary, but this Parliament was not in session when James II fled the realm throwing the Great Seal into the Thames. Like our Legislature, this Convention Parliament had no power to call itself together. Yet, necessity requires the English con-

stitutional lawyer to bridge the gap. Maitland, Constitutional History of England, 283–5.

Similarly, in this country, the Constitutional Convention was authorized by the Congress for "the sole and express purpose" of considering amendments to the Articles of Confederation. These amendments were to be agreed to by the Congress as well as the states. XXXII Journal Cont.Cong. 74. However, the Philadelphia Convention proceeded to bring forth an entirely new document. Yet only in metaphysical scholastic disputation would an American lawyer say that the Constitution of the United States is unconstitutional. Cooley's Constitutional Limitations (8th Ed.) 9.

Were it not for the uncertainty stemming from the appeal to the Supreme Court of the United States in Baker v. Carr, 179 F. Supp. 824 (D.C.Tenn.), we should need but to refer to Anderson, C. J.'s, comment to a similar argument made in Orr v. State, 236 Ala. 462, 183 So. 445, 446, "not only without merit but * * * frivolous." See also People v. Clardy, 334 Ill. 160, 165 N.E. 638 (not within judicial power); Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837.

In Baker v. Carr, supra, the three-judge court relied upon Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432; McDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3; South v. Peters, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834, and Radford v. Gary, 352 U.S. 991, 77 S.Ct. 559, 1 L.Ed.2d 540, and other like cases, in concluding that "the federal courts, whether from a *lack of jurisdiction* or from the *inappropriateness* of the subject matter * * *, will not intervene in cases of this type to compel legislative reapportionment." (Italics added.) [179 F.Supp. 826.]

The relief sought in these and other "malapportionment" actions seems usually to be a petition for a declaratory judgment or a mandatory injunction against the members of the legislature to compel enactment of reapportioning laws or an order requiring election at large.

The authorities relied on in all phases of the question are brought together in the majority, concurring and dissenting opinions in Scholle v. Hare, 360 Mich. 1, 104 N.W.2d 63. The Supreme Court of Michigan in this case was confronted with an attack upon a constitutional amendment which would permit the State Senate to be established without regard to population ratios or fluctuations therein. The court, though divided, rejected the notion that either the state or federal constitution required an exact and proportionate representation of each voter in each and every organ of government.

We find no attempt by either party in any of the cases, such as Baker v. Carr or Scholle v. Hare, supra, to say that anarchy must prevail because of the failure of various sessions of a legislature to provide for a redistribution of seats. We understand there is currently pending with the Supreme Court of the United States, Hilliard v. State of Tennessee, No. 342, an appeal which seeks to set aside a conviction because of a 1955 Tennessee Act which is claimed to be void for a reason like the one here advanced.[3]

While constitutional questions sometimes seem to require looking into "the seeds of time," nevertheless, we find no quickening ground even though Baker v. Carr or Scholle v. Hare, supra, should be reversed. The remedies there sought would in no way logically extend to Lindsay's hoped for voidness of Code 1940, T. 14, § 63. Thus, the conclusions in Lewis, Legislative Apportionment and The Federal Courts, 71 Harv.L.Rev. 1057, in criticizing the "inappropriateness" doctrine of Colegrove v. Green, supra, merely put forward as the appropriate purported remedy that elections be held at large. The author considers:

"* * * It would be so burdensome for all the representatives in a large state or the entire membership of the legislature to carry on statewide campaigns that redistricting almost inevitably would result from a decree requiring an election at large. * *"

Accordingly, we consider that Orr v. State, supra, still correctly states the law as to the validity of a criminal statute enacted by a non-reapportioned legislature.

The judgment of the circuit court is due to be

Affirmed.

A similar use of an "organizing myth" supports the 14th Amendment. Coleman v. Miller, 307 U.S. 433, 447–450, 59 S. Ct. 972, 83 L.Ed. 1385. Cf. Suthon, The Dubious Origin of the Fourteenth Amendment, 28 Tulane L.Rev. 22, and Judge Call's The Fourteenth Amendment and Its Sceptical Background. XIII Baylor Law Review 1.