**John C. WATTS, Appellant,**

v.

**Henry H. CARTER, Appellee.**

Court of Appeals of Kentucky.

March 23, 1962.

Louis Cox, John Hopkins, Frankfort, Bradford T. Garrison, Nicholasville, for appellant.

John B. Breckinridge, Atty. Gen., H. N. McTyeire, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

This is a declaratory judgment action testing the validity of the 1962 Congressional redistricting act of the General Assembly, House Bill 443. The circuit court held it valid.

The population represented by the seven districts created by the act varies from 350,-839 in the First (including 20 counties) to 610,947 in the Third (consisting of Jefferson County alone). The configuration of one of the districts, the Fourth, is described in appellant's brief as "a geographic monstrosity resembling a goose with its head in the urban counties of Grant [Boone?], Campbell and Kenton and its long neck stretched along the [Ohio] river counties with its body comprised of the rural areas of South-Central Kentucky." For these reasons it is submitted that the act is arbitrary and in violation of § 6 of the Constitution of this state, which reads: "All elections shall be free and equal." That is the only question raised.

In enacting this legislation the General Assembly undoubtedly relied on the precedent established by Watts v. O'Connell, Ky.1952, 247 S.W.2d 531, in which case the same objections had been asserted against the 1952 redistricting act. The population spread in that instance ranged from 304,978 to 484,615, as compared with 350,839 to 610,947 in this, but the principles governing the two cases are the same, and we cannot reach a different conclusion today without overruling Watts v. O'Connell and plunging the choice of members for the House of Representatives into a state-wide scramble.

In Colegrove v. Green, 1946, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, the United States Supreme Court, considering the federal questions posed by disparities in contour and population of Congressional districts, took the position that the problem was not a proper subject of judicial intervention and commented, in the majority opinion of Mr. Justice Frankfurter, that the "remedy for unfairness in districting is to secure State legislatures that will apportion properly, or to invoke the ample powers of Congress." Whether that will continue to be the attitude of the Supreme Court is not free of doubt. In a forceful dissent Mr. Justice Black, joined by two other members of the court, argued that the failure of a state legislature "to bring about approximately equal representation of citizens in Congress" amounted to a denial of equal protection of the laws. We take cognizance that the Siamese twin of this problem, the question of fair and proper apportionment of state legislative representation, is now under consideration by the Supreme Court in the case of Baker v. Carr, D.C.M.D. Tenn., 1959, 179 F.Supp. 824, probable jurisdiction noted 364 U.S. 898, 81 S.Ct. 230, 5 L.Ed.2d 193.

In Watts v. O'Connell, supra, this court carefully refrained from suggesting that it would not declare an unfair and unequal Congressional apportionment to be unconstitutional. To the contrary, it is the duty of the legislature to recognize that a disproportionate representation, whether it results from population changes or from new legislation, can be so flagrant and unwarranted that the duty of the courts to uphold the constitutional rights of equality under the law will override their traditional reluctance to enter the political thicket.

In this case our most serious concern centers on the situation of the Third District, with a population of 610,947 as against 463,275 in the next most populous district, the Seventh, and 350,839 in the least populous, the First. Considering, however, the special problems and disadvantages inherent in splitting up a single densely-populated county and grafting a slice of it onto another and dissimilar district, we are unable to say that the solution chosen by the legislature was clearly arbitrary and unreasonable.

With respect to the Fourth District, we find no constitutional violation in the combination of urban with rural counties. Since Boone, Campbell and Kenton Counties did not have an aggregate population sufficient to qualify as a district to themselves it was unavoidable that they be joined with a number of rural counties anyway, so it was simply a question of which ones, and that was a matter of legislative choice and prerogative. As to the shape of the new district, compactness was formerly, but is no longer, a statutory requirement imposed by Congress. See Watts v. O'Connell, supra, and authorities there cited. We cannot hold that the legislative discretion in this regard is limited by considerations purely esthetic.

Judgment affirmed.